IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:20-cr-110 (RDA) |
| | ) | |
| JOSEPH E. GARGAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Joseph Gargan's ("Defendant") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Motion"), Reply, Supplemental Motion, and Addendum to Supplemental Motion, and Second Addendum to Supplemental Brief (together "Supporting Documents"). Dkt. Nos. 39; 53; 56; 60; 68. Considering the Motion, the Supporting Documents, and the Government's Opposition (Dkt. 46), and for the reasons that follow, it is hereby ORDERED that Defendant's Compassionate Release Motion (Dkt. 39) is GRANTED and Defendant's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 41) is DENIED.

I. BACKGROUND

On June 15, 2020, Defendant Joseph Gargan pleaded guilty in this Court to a two-count indictment for (1) embezzlement of government funds, in violation of 18 U.S.C. § 641; and (2) wire fraud, in violation of 18 U.S.C. § 1343. On September 23, 2020, the Court sentenced Defendant to 70 months of imprisonment and three years of supervised release on both counts, to run concurrently. On January 5, 2021, Defendant self-reported to FCI Loretto to begin his sentence. His projected release date is December 24, 2025.

On May 10, 2021, Defendant's request for compassionate release was denied by Warden Moser at FCI Loretto.  On June 14, 2021, Defendant appealed his denial.  To date, the Bureau of Prisons has not acted on the request.  At some point after July 20, 2021, the Bureau of Prisons moved Defendant to a different prison, Federal Medical Center – Butner ("FMC Butner") Defendant asserts that he contracted COVID-19 at FCI Loretto and continues to suffer from the effects of post-acute sequelae SARS-COV-2 (more commonly known as "long COVID").  After Defendant filed his *pro se* compassionate release motion in this Court, the Court appointed counsel to represent Defendant.  *See* Dkt. 52.  The Court then extended the Government's and Defendant's respective supplemental briefing deadlines.

## II.  ANALYSIS

Defendant requests that, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court release him from detention.  Defendant asserts that he has exhausted administrative remedies, as he had not received a response from the warden thirty days after filing his request for compassionate release with FCI Loretto.  The Government agrees that Defendant has exhausted his administrative remedies.  Recent authority from the Fourth Circuit makes clear that Defendant's motion is ripe for review.  *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies.").

Having determined that Defendant has satisfied the exhaustion requirement, the Court must next determine whether "extraordinary and compelling reasons" and the "factors set forth in section 3553(a)" warrant Defendant's release.  18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

The First Step Act, the statute authorizing courts to consider motions for compassionate release like the one Defendant brings, states that release is appropriate only in "extraordinary and compelling" circumstances. 18 U.S.C. § 3582(c)(1)(A). The text of the statute does not define the term, however, and Congress instead delegated to the United States Sentencing Commission ("the Sentencing Commission") the responsibility of defining the scope of that phrase. *McCoy*, 981 F.3d at 276. Accordingly, 28 U.S.C. § 994(t) provides that:

> [t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Sentencing Commission determined, in pertinent part, that:

> [u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) Extraordinary and compelling reasons warrant the reduction; . . . (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Further, the Sentencing Commission has indicated that if a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," then "extraordinary and compelling reasons exist" if the defendant's medical condition, age, family circumstances, or other reason justify such release. U.S.S.G. § 1B1.13, cmt. n.1. In weighing the danger the defendant poses to the community, courts are directed to consider a number of factors, including "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim[;]" "the weight of the evidence against the

person;" "the history and characteristics of the person[;]" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

After the First Step Act's enactment, many district courts, including this Court, have determined that the factors set forth in U.S.S.G. § 1B1.13, cmt. n.1 "provide[ ] helpful guidance, but . . . do[ ] not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019)) (citing *United States v. Redd*, 444 F. Supp. 3d 717, 725-26 (E.D. Va. 2020) and other cases). To be sure, § 3582(c)(1)(A) "requires [ ] that sentence reductions be consistent with 'applicable policy statements.'" *McCoy*, 981 F.3d at 281 (quoting 18 U.S.C. § 3582(c)(1)(A)). But there remains "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

As such, this Court has "join[ed] other courts in concluding that a court may find . . . that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). . . ." *Redd*, 444 F. Supp. 3d at 726. Accordingly, this Court will treat the § 1B1.13 cmt. n.1(A)-(C) factors as a guide, but not as an exhaustive list of circumstances that could justify compassionate release.[1] *See also United States v. Jackson*, No.

[1] The *McCoy* court noted, however, that § 1B1.13 "remains helpful guidance even when motions are filed by defendants." 981 F.3d at 282 n.7. In the wake of *McCoy*, this circuit continues to consult § 1B1.13 for compassionate release motions. *See, e.g.*, *United States v. Trotman*, 837

3:17-cr-29-2, 2021 WL 1723653, at *1 (E.D. Va. Apr. 30, 2021) (finding "[t]he policy statements are not binding but are informative and may be considered") (citing *McCoy*, 981 F.3d at 276).

A. Extraordinary and Compelling Reasons

Defendant, who is 62 years old, argues that his age and health conditions present an extraordinary and compelling medical reason for his release. Specifically, Defendant asserts that he has several long-term pre-existing medical conditions the CDC identifies as extreme risk factors related to COVID-19. These include skin cancer, prostate cancer, post-acute sequela SARS-COV-2 ("PASC"), post-traumatic stress disorder ("PTSD"), chronic traumatic encephalopathy ("CTE"), sleep apnea, coronary artery disease ("CAD"), liver dysfunction, and polytrauma of chest and abdomen. Dkt. 39 at 2. Of these health conditions, prostate cancer is the one for which Defendant has supplied the Court with the most extensive medical records.

An extraordinary and compelling reason for compassionate release exists where the defendant suffers from a terminal illness. U.S.S.G. § 1B1.13 n.1(A)(i); *see also United States v. Mumford*, 544 F. Supp. 3d 615, 617 (E.D. Va. 2021) (finding that end-stage renal disease requiring hemodialysis three times per week was a terminal illness and thus constituted an extraordinary and compelling reason for compassionate release); *United States v. Webster*, No. 3:91-cr-138, 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020) (finding that Stage IV colon and prostate cancer was a "terminal illness" [that] constitutes an extraordinary and compelling reason for compassionate release").

---

F. App'x 187, 189 (4th Cir. 2020) (per curiam); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam); *United States v. Nabaya*, No. 3:17-cr-3, 2021 WL 54361, at *6 (E.D. Va. Jan. 6, 2021); *United States v. Prater*, No. 3:13-cr-133, 2021 WL 54364, at *3 (E.D. Va. Jan. 6, 2021); *Perkins v. United States*, No. 2:18-cr-177, 2020 WL 7364222, at *2 (E.D. Va. Dec. 15, 2020); *United States v. Reid*, No. 2:02-cr-172-7, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020).

Defendant's records indicate he has prostate cancer with a Gleason score of either a 7 or 8. According to the Prostate Cancer Foundation, a Gleason score of 7 equates to an intermediate-grade cancer, while 8 represents a high-grade cancer.[2] For his part, Defendant cites evidence that his Gleason score should instead be considered an 8 out of 10, which would suggest a high-grade, more aggressive form of prostate cancer. Defendant points to biopsy samples that show the aggressiveness of his cancer, including that it has spread to both sides of his prostate; an expected treatment regimen involving hormone therapy and 42 days of radiation; and potential chemotherapy and surgery. The Government concedes that Defendant's condition appears serious. This acknowledgment is consistent with what is known about the trajectory of advanced-stage prostate cancer:

> High grade Gleason score prostate cancers (7, 8, 9, 10) are aggressive and more likely to grow rapidly and spread out of the prostate and through the bloodstream and lymph system . . . . Because of their aggressive nature, high grade Gleason score prostate cancers compared to low grade Gleason score prostate cancers are more likely to have micro-metastatic disease, to spread outside of the prostate. This is so even if it is not obvious on tests for metastasis (i.e., scans), with the onset of metastasis occurring in a very short interval between initially starting in the prostate and then spreading out.

*Gunter v. United States*, No. 13-CV-1036-SMY-DGW, 2018 WL 488720, at *8 (S.D. Ill. Jan. 19, 2018).

Under the Sentencing Guidelines, extraordinary and compelling reasons exists if "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). "A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." *Id.* Although this standard

[2] The foundation explains that "[t]heoretically, Gleason scores range from 2-10. However, since Dr. Gleason's original classification, pathologists almost never assign scores 2-5, and Gleason scores assigned will range from 6 to 10, with 6 being the lowest grade cancer." Prostate Cancer Foundation, Gleason Score and Grade Group, https://www.pcf.org/about-prostate-cancer/diagnosis-staging-prostate-cancer/gleason-score-isup-grade/ (last visited Oct. 4, 2022).

necessarily requires a fact-dependent inquiry, the commentary to the Guidelines notes that "[e]xamples include metastatic solid-tumor cancer," among other conditions. *Id.* Defendant's advanced-stage prostate cancer prognosis appears to be grave; he states that his medical records show malignancies in 10 out of 12 biopsy samples. After first being incarcerated at FCI Loretto, Defendant was transferred to FMC Butner for treatment specifically due to his deteriorating prostate health.

In sum, Defendant's records indicate that he suffers from the sort of incurable disease that courts have found to be extraordinary and compelling because it presents a prognosis "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). To state the obvious, prostate cancer is indeed a serious condition, and a prostate cancer patient's prognosis can change over time. The record evidence before the Court indicates that Defendant's prostate cancer has progressed, or will soon progress, to the terminal stage.

Defendant also points to a number of other health conditions that he asserts justify compassionate release. For example, Defendant tested positive for COVID-19 in January of 2021, and he explains that he suffers lingering effects from this infection. Dkt. 46 at 11. Public health guidance states that some people "can experience long-term effects from their infection, known as post-COVID conditions (PCC) or long COVID," which may entail a range of symptoms, including fatigue and shortness of breath, "lasting weeks or months after COVID-19 illness." *See Long COVID or Post-COVID Conditions*, Centers for Disease Control and Prevention (Sept. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html. Even so, a prior COVID-19 infection is not a risk factor that courts have generally found to singularly justify granting compassionate release. *See, e.g.*, *United States v. Ferguson*, No. 5:15-CR-18-KDB-DSC-1, 2020 WL 5300874, at *5 (W.D.N.C. Sept. 4, 2020); *United States v. Hartley*, No. 5:13-CR-46-

KDB-DSC-1, 2020 WL 4926146, at *4 (W.D.N.C. Aug. 21, 2020) ("[T]he possibility that the defendant may be re-infected with the virus does not constitute an extraordinary and compelling reason for compassionate release."). But when considered in combination with Defendant's existing health conditions, most notably his progressive prostate cancer diagnosis, the risk of a future COVID-19 infection as well as "the potential long-term effects of the illness" distinguish Defendant's case for compassionate release from those cases in which an inmate has merely contracted and recovered from COVID-19. *See United States v. Williams*, No. 19-CR-134-PWG, 2020 WL 3073320, at *4 (D. Md. June 10, 2020).

In addition, Defendant has undergone surgery for his skin cancer diagnosis, has submitted documentation regarding what Defendant describes as a botched biopsy that resulted in significant scarring in both of his lower legs, and has suffered from Sinus Bradycardia in recent months. These are serious conditions, and it is beyond dispute that Defendant has experienced significant health difficulties. These conditions, however, do not constitute an extraordinary or compelling reason for relief and do not justify release under the statute's "other reasons" provision. *See* U.S.S.G. § 1B1.13 n.1(A)(i); *see also id.* cmt. n.1(D).

Beyond his own health conditions, Defendant points to the Bureau of Prisons' general failure to contain the COVID-19 virus among inmates and staff. Arguing that FMC Butner has a "sordid history as far as COVID-19 is concerned," Dkt. 56 at 8, Defendant cites a Department of Justice Office of Inspector General report detailing the Bureau of Prisons' COVID-19 response and the agency's staffing shortage; the greater risk of COVID-19 posed to patients who, like Defendant, are located on FMC Butner's oncology floor; the risk posed by unvaccinated FMC Butner staff and the prison's virus testing protocol; and Defendant's personal treatment while in quarantine. *Id.* at 8-9. On January 18, 2022 Defendant submitted to his counselor at Butner FMC

an "Attempt at Informal Resolution" regarding his concerns over his lack of medical treatment for sleep apnea, BOP's delay in treating what was later diagnosed as prostate cancer, BOP's treatment of his skin cancer, and BOP's delay in treating multiple psychiatric issues including severe depression, anxiety, PTSD, and alcohol addiction.  Dkt. 68-3.

"[I]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020).  At this time, FMC Butner does not have any inmates who have tested positive for COVID-19, although 195 inmates at the facility have recovered from the virus while six inmates have died.  BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 4, 2022).  Additionally, the facility has determined its operational level is Level 3, meaning the facility is currently making "intense modifications" to combat COVID-19.  *See* BOP, COVID-19 Operational Levels, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Oct. 4, 2022).  In addition, the Court recognizes that because Defendant has been housed on the oncology floor at FMC Butner for 16 to 24 hours a day, and can reasonably expected to be detained there as his cancer progresses, his risk of infection is heightened.  Due to this heightened risk of COVID-19 infection, there is good reason to believe that Defendant's current facility, combined with his delicate health status, makes him particularly susceptible to COVID-19.

Having reviewed the record, the Court concludes that the risk posed by COVID-19 at Defendant's facility, combined with Defendant's particularized susceptibility to severe illness or death should he contract COVID-19, constitutes an extraordinary and compelling reason warranting his compassionate release.  *See Feiling*, 453 F. Supp. 3d at 841.  This determination

should not be interpreted in any way to suggest that the FMC Butner facility has not exercised its due diligence to ensure the health and safety of its prison population.

B. 18 U.S.C. § 3553(a) Factors

In addition to considering whether Defendant's reasons for release are "extraordinary and compelling," the Court considers the factors set forth in 18 U.S.C. § 3553(a). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for–(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ; or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements . . . ; (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). No one factor is dispositive.

Here, even after Defendant has demonstrated "extraordinary and compelling reasons" for release, the Court must still determine whether compassionate release is proper in this case by looking to the § 3553(a) factors. *See United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021); *United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021) (affirming denial of compassionate release to defendant who suffered from heart condition during COVID-19 pandemic because § 3553(a) factors did not justify release).

The nature and circumstances of Defendant's offense, which involved a years-long scheme to defraud the United States and people who entered into settlement agreements with the United States of over eight million dollars, were substantial. Dkt. 46 at 15. Defendant's fraudulent acts inflicted significant harms on the public at large. The significance of Defendant's pervasive

criminal acts is not to be discounted. His offenses, however, were nonviolent. Moreover, the Court does not find that this Defendant, now 62, poses a risk of danger to the community upon release. Applying the relevant factors in 18 U.S.C. § 3142(g), the Court finds that the "nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release" to be vanishingly minimal. *Id.* The Government does not argue Defendant's release would pose a significant risk to the community, and the Court takes note that his recidivism pattern score is reported as "minimum/minimum"—the lowest rate possible. Furthermore, the length of time Defendant has served in federal custody—here, more than 21 months' incarceration—sufficiently reflects the gravity of his offense, promotes respect for the law, and affords adequate deterrence from similar conduct when analyzing the current record.

The § 3553(a) factor focused on the need to provide Defendant with appropriate "medical care . . . in the most effective manner," *id.* § 3553(a)(2)(D), favors Defendant's release. Defendant suffers from a litany of serious health issues, including prostate cancer and skin cancer, and the record reveals that his concerns about his treatment have spurred multiple administrative complaints during his time in federal custody. "Given [Defendant's] older age and multiple health conditions that increase his risk of complications or death due to COVID-19, combined with his increased risk of contracting COVID-19 while incarcerated at FMC Butner, the court further finds that a reduction of sentence to time served would also meet 'the need for the sentence imposed ... to provide the defendant with . . . medical care . . . in the most effective manner.'" *United States v. Luna*, 478 F. Supp. 3d 859, 863 (N.D. Cal. 2020) (quoting 18 U.S.C. § 3553(a)(2)(D)).

The Court takes particular note of the fact that Defendant has paid restitution in excess of $1 million since the date of his sentencing. Supporting Defendant's case is a letter from counsel for one of the victim trusts in Defendant's case, which verifies that Defendant has now made full

repayment of the $1,032,750.00 to the trust he represents. Dkt. 68-1 at 6. Defendant's efforts to satisfy his restitution obligations are significant; the factor regarding "the need to provide restitution to any victims of the offense" therefore cuts in his favor. *See* 18 U.S.C. § 3553(a)(7).

Furthermore, the Court also considers Defendant's post-sentencing conduct and any rehabilitative efforts he has made. *See Concepcion v. United States*, 142 S. Ct. 2389, 2401 (2022) ("The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes."). The Court commends Defendant for taking the steps he has to improve himself, and these steps indeed appear to be "extraordinary." Moreover, Defendant has submitted a detailed reentry plan in which he describes the doctors and medical facilities from which he would seek care, as well as where he would live and potentially work. Defendant's rehabilitation argument articulates an extraordinary or compelling reason for reducing his sentence in light of the factors under 18 U.S.C. § 3553(a).

Considering the § 3553(a) factors as a whole, the Court finds that these factors weigh in Defendant's favor. Moreover, the Court is persuaded that Defendant will not pose a threat to the community under 18 U.S.C. § 3142(g). While the Court acknowledges the seriousness of Defendant's offenses, they were nonviolent in nature. Moreover, Defendant has not had any disciplinary infractions during his time in federal custody. A reduced sentence, though it would fall below the applicable guideline range of 70 to 87 months identified by this Court at sentencing, adequately expresses the seriousness of the offense, deters criminal conduct, and protects the public under § 3553(a). The Court has also considered that Defendant has repeatedly express his remorse to counsel representing victims of his offenses, describing what he did as "inexcusable acts." Dkt. 68-1 at 6. As detailed above, the Court finds that Defendant's serious medical

conditions, some of which have developed subsequent to his original sentencing, represent a significant factor warranting a reduction of his sentence. Considering the current COVID-19 pandemic and Defendant's underlying health concerns and age, the Court finds it appropriate to reduce his sentence to time served.

C. Defendant's 28 U.S.C. § 2255 Petition

In his compassionate release motion, Defendant echoes arguments that he also makes in a separately filed petition to vacate his judgment of conviction pursuant to 28 U.S.C. § 2255. Because a compassionate release motion is not the proper vehicle for such arguments, the Court considers them only in the context of his § 2255 petition. *See, e.g.*, *Nelson v. United States*, No. 1:08-CR-00058, 2016 WL 868344, at *3 (S.D.W. Va. Mar. 7, 2016), *aff'd*, 655 F. App'x 166 (4th Cir.) ("[A]n inmate in federal custody may only bring a collateral attack on the legality of his detention or sentence under 28 U.S.C. § 2255.2 . . . Petitioner failed to comply with this requirement, and instead sought relief under 18 U.S.C. § 3582(c).").

In his § 2255 petition, Defendant argues that his counsel acted negligently by failing to properly account for a prior conviction, resulting in a harsher-than-anticipated sentence. Defendant also assigns a number of different errors to his counsel, faulting the way they handled various aspects of his plea negotiations and sentencing. To make a valid ineffective assistance of counsel claim, Defendant must satisfy the cause-and-prejudice set out in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The first part of the *Strickland* test addresses a counsel's professional competence; to prevail at this step, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. At the second step, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Failure to make the required

showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. As the party asserting ineffective assistance of counsel, Defendant bears the burden of proof "to meet the elements of the Strickland test." *United States v. Neville*, No. 1:07-cr-248, 2009 WL 2060059, at *5 (E.D. Va. July 10, 2009).

Defendant fails to carry that burden, offering little more than unsubstantiated theories of his counsel's inadequate performance during his plea negotiations and at sentencing. In fact, Defendant twice acknowledged that he was fully satisfied with the performance of his attorneys, both at his change-of-plea hearing and at his sentencing. *See* Dkt. 20 at 7; Dkt. 37 at 35. Defendant argues that his counsel improperly calculated the sentencing guidelines, causing Defendant to receive a sentence different from the one he expected; that he suffered prejudice when his counsel resigned between the plea and sentencing; that his former counsel overcharged him for their services; that his former counsel did not inform him of when and where Defendant would be arrested; that his former counsels erred in failing to object to the restitution amount; and that he did not receive a Rule 35 motion despite his counsel's statement that he would. In effect, Defendant misplaces the blame for his current circumstances. Defendant's circumstances are not the fault of his trial counsel; rather they are the result of Defendant's thievery.[3]

Each of Defendant's arguments in favor of vacating his sentence utterly fail because he has not established that any actions his counsel took, or alternatively, did not take, fell below an objective standard of "prevailing professional norms." *Strickland*, 466 U.S. at 688. First,

[3] Suffice it to say that Defendant's position compels the Court to revisit the § 3553(a) factors that channeled its discretion at sentencing and again guide its determination to grant compassionate release, specifically "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). Defendant seems to go to great lengths to blame others for his situation. His gaze might be better placed introspectively.

Defendant was on notice that his sentence would be determined by the Court, as evidenced by the explicit language of his Plea Agreement. Second, Defendant had the opportunity to object to his former counsel's motion to withdraw after the plea hearing, but he did not; instead, he consented to be represented by new counsel. Third, any argument Defendant raises related to a fee dispute with his former counsel, if actionable at all, would sound in breach of contract; it is not, however, a proper claim in his § 2255 petition. Fourth, Defendant's counsel exercised no control over the location or timing of Defendant's arrest, as that is a decision committed to the discretion of federal authorities. Fifth, Defendant's objections to the restitution figure are not cognizable in a § 2255 proceeding. *See United States v. Mayhew*, 995 F.3d 171, 1813 (4th Cir. 2021) ("[B]y its plain terms § 2255 provides no avenue to challenge a restitution order."). Finally, because the Government exercises sole discretion to bring motions pursuant to Federal Rule of Criminal Procedure 35, Defendant's assertion that his counsel assured he would receive the benefit of such a motion does not constitute prejudice under *Strickland*. *See* Fed. R. Crim. P. 35(b) (stating that any such sentencing reduction must be granted "[u]pon the government's motion").

Because Defendant fails to establish deficient performance under Strickland, this Court "need not consider the performance prong." *Fields v. Attorney Gen. Of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). Even if Defendant established sufficient cause, however, he cannot show that he suffered prejudice. He points to no evidence that his counsel's actions caused him to forego trial or that a different outcome would have resulted but for his counsel's performance. For these reasons, and upon a review of the record, this Court does not find that the performance of Defendant's counsel amounted to a violation of his Sixth Amendment right to counsel.

## III.  CONCLUSION

Defendant has established that extraordinary and compelling reasons justify his release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Compassionate Release (Dkt. 39) is GRANTED and Defendant's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 41) is DENIED; and it is

FURTHER ORDERED that the custodial portion of Defendant's sentence is reduced to time served; and it is

FURTHER ORDERED that the Federal Bureau of Prisons is directed to release Defendant from confinement no more than fourteen days (14) from the date of this Memorandum Opinion and Order; and it is

FURTHER ORDERED that upon release, Defendant shall begin serving the three-year term of supervised release this Court imposed on September 23, 2020; and it is

FURTHER ORDERED that all terms and conditions of supervision remain in full force and effect.

The Clerk is directed to forward a copy of this Order to Defendant's counsel, counsel for the Government, the Warden at FMC Butner, and the United States Probation Office.

It is SO ORDERED.

Alexandria, Virginia
October 4, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge